```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
         ASHEVILLE DIVISION
          1:21-cv-00257-MR
```

| | | |
|---|---|---|
| JOHNATHAN A. FULLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| FNU SHEPPARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 7].

**I.    BACKGROUND**

Pro se Plaintiff Johnathan A. Fuller ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Avery/Mitchell Correctional Institution ("AMCI") in Spruce Pine, North Carolina. He filed this action on September 27, 2021, pursuant to 42 U.S.C. § 1983, against Defendants FNU Sheppard, identified as an officer at AMCI; R. Honeycutt, identified as the Superintendent of AMCI; Randy S. Mull, identified as a North Carolina Department of Public Safety (NCDPS) Disciplinary Hearing Officer (DHO); and Todd Ishee, identified as the Commissioner of the NCDPS. [Doc. 1 at

2-3]. Plaintiff alleges that, on December 4, 2020, while Plaintiff, an African American, was housed in segregation at AMCI, Defendant Sheppard tried to force Plaintiff to sign a DC-160 form, which would have given permission to destroy "all of [Plaintiff's] valuables," which included "family photos, obituaries, all legal books and personal, prescription eyewear, shades, and several other small personal items." [Id. at 3-4]. Although Plaintiff does not allege having signed the form, he claims he was denied many of his photographs, which depicted Plaintiff's Caucasian fiancé and friends, and left with only a picture of his biracial child. Plaintiff also alleges that he was denied his state-prescribed eyeglasses, which contain special UV lenses that protect Plaintiff's eyes, and has suffered significant eye damage as a result. Plaintiff further alleges that he was denied "literature," preventing him from litigating his legal issues "to the fullest." [Id. at 4].

Plaintiff asserts that "black people suffered the most at this all white controlled institution" and that Defendant Sheppard's actions "were racially motivated at this facility that is renown for it." [Id.]. Plaintiff alleges that he also named as Defendants "those who condone in [Defendant Sheppard's] behavior, failed to intervene, and participated in the prosecution of [Plaintiff and his] personal property were all working in concert." [Id.].

2

Plaintiff generally claims violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, but does not allege how he believes the alleged conduct violates each of these rights. [Id. at 3]. Plaintiff also purports to assert a claim for racial profiling. [Id.]. For injuries, Plaintiff claims he suffered injury to his eyes and vision, lost property, and injury to his mental and emotional health. [Id. at 6].

For relief, Plaintiff seeks monetary and injunctive relief and punitive damages. [Id. at 6].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.

3

Case 1:21-cv-00257-MR   Document 9   Filed 11/08/21   Page 3 of 14

Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff here alleges "racial profiling" and violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution. Because Plaintiff fails to state how the alleged conduct violates these rights, the Court will address any potential claims fairly raised by Plaintiff's allegations. Plaintiff, however, fails to allege any facts supporting claims under the Fifth or Sixth Amendments and the Court will dismiss these claims.

4

Case 1:21-cv-00257-MR   Document 9   Filed 11/08/21   Page 4 of 14

### A. Official Capacity Claims

Plaintiff purports to sue Defendants, who are all state officials, in their individual and official capacities. [Id. at 2-3]. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Plaintiff's claims against Defendants in their official capacities do not survive initial review and will be dismissed.

### B. First Amendment

Prisoners must have meaningful access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have

the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Plaintiff here alleges that he was denied access to his personal "literature" without which he cannot litigate his "legal issues to the fullest." Plaintiff does not allege that he has been prevented from bringing a challenge to his sentence or his conditions of confinement or that he has suffered any actual injury. Plaintiff has not stated a claim under the First Amendment based on denial of access to the Courts. The Court will, therefore, dismiss this claim on initial review.

### C. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. CONST. amend. IV. "The applicability of the Fourth Amendment turns on

whether 'the person involving its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action.'" King v. Rubenstein, 825 F.3d 206, 214 (2016) (quoting Hudson v. Palmer, 468 U.S. 517, 525, 104 S. Ct. 3194 (1984) (internal quotations omitted)). "[P]risoners have no legitimate expectation of privacy and … the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." Hudson, 468 U.S. at 530. Thus, to the extent Plaintiff claims that his Fourth Amendment rights were violated by the "seizure" of Plaintiff's property, Plaintiff has failed to state a claim for relief under the Fourth Amendment. The Court will dismiss this claim.

## D. Eighth Amendment

Plaintiff claims the alleged conduct violated his rights under the Eighth Amendment. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement, Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996), and from deliberate indifference to a prisoner's serious medical need, Estelle v. Gamble, 429 U.S. 97, 104 (1976).

"Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Here, taking Plaintiff's

allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not stated a claim under § 1983 for violation of the Eighth Amendment in relation to his personal property. Plaintiff's claim that he was denied some of his property while in segregation does not fall within the protections of the Eighth Amendment. As such, Plaintiff's Eighth Amendment claim, to the extent it is based on his conditions of confinement, does not survive initial review.

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994);

8

Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).  "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

Taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, Plaintiff's claim against Defendant Sheppard for deliberate indifference to Plaintiff's serious medical needs under the Eighth Amendment survives initial review as it is not clearly frivolous.  That is, Plaintiff alleges that Defendant Sheppard deprived him of prescription eyeglasses that provided Plaintiff with special UV protection and that Plaintiff has suffered "significant eye damage" as a result.  Plaintiff,

As to Defendants Honeycutt, Mull, and Ishee, Plaintiff alleges vaguely that these Defendants condoned Sheppard's actions, failed to intervene, and worked in concert.  To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted).  As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Under Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994),

9

however, supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) and "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. 13 F.3d at 799 (citations omitted).

As to Defendant Honeycutt, the Superintendent of AMCI, the Court can infer for the sake of initial review, that supervisory liability may attach where Honeycutt could have been aware of Defendant Sheppard's alleged actions and failed to intervene adequately. The Court, therefore, will allow Plaintiff's Eighth Amendment claim, as set forth above, against Defendant Honeycutt to survive initial review.

As to Defendant Ishee, identified as the Commissioner of the NCDPS, the Court cannot infer an "affirmative causal link" between Ishee's alleged inaction, as so vaguely alleged, and the constitutional injury suffered by Plaintiff. See Shaw, 13 F.3d at 799. Similarly, with no allegations of personal participation by Defendant Mull, who Plaintiff alleges is a DHO, and

10

particularly no allegations related to any hearing, hearing decision, or disciplinary action, the Court cannot make the leap needed to save Plaintiff's claims against Defendant Mull.  In short, Plaintiff makes no allegations fairly implicating any involvement by Defendants Mull or Ishee relative to this claim or otherwise and these Defendants will be dismissed.

## E. Fourteenth Amendment

Plaintiff's Complaint impliedly presents claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

### 1. Equal Protection

To state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination.  See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

Here, Plaintiff alleges that he was a segregation inmate, that he is African American and was denied certain property, including pictures depicting his Caucasian fiancé and friends, that he believes that he was

racially profiled, and that the deprivation of Plaintiff's property was racially motivated.

Giving Plaintiff the benefit of every reasonable inference, these allegations are sufficient to survive initial review on Plaintiff's equal protection claim against Defendant Sheppard in that they are not clearly frivolous. See Green v. Maroules, 211 Fed. App'x 159, 162 (4th Cir. 2006) (finding Plaintiff's allegations that she was racially profiled and, consequently, falsely arrested were sufficient to state an equal protection claim and reversing district court's dismissal on initial review). Plaintiff's equal protection claim against Defendant Honeycutt also survives for the same reason that Plaintiff's Eighth Amendment claim against him survived. Plaintiff's purported separate claim for racial profiling will, however, be dismissed. There is no independent cause of action for racial profiling.

### 2. Due Process

Even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Plaintiff may bring his claim for the deprivation of his property in state court. As such, Plaintiff has failed to state a claim for relief

under the Fourteenth Amendment's due process clause. The Court will dismiss this claim.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Eighth Amendment and Fourteenth Amendment equal protection claims against Defendants Sheppard and Honeycutt survive initial review. The Court will dismiss Defendants Ishee and Hull and Plaintiff's remaining claims.

In light of the Court's determination that this case passes initial review in accordance with this Order, the Court will order the Clerk of Court to commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Sheppard and Honeycutt, who are alleged to be current or former employees of the NCDPS.

## ORDER

**IT IS, THEREFORE, ORDERED** that Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Sheppard and Honeycutt, who are alleged to be current or former employees of NCDPS.

**IT IS FURTHER ORDERED** that all claims asserted in this matter as to all Defendants are hereby **DISMISSED with prejudice** except for Plaintiff's Eighth Amendment and Fourteenth Amendment equal protection

13

claims against Defendants Sheppard and Honeycutt in their individual capacities, which are allowed to pass initial review.

**IT IS FURTHER ORDERED** that Defendants Ishee and Mull are **DISMISSED** as Defendants in this matter.

**IT IS SO ORDERED**.

Signed: November 8, 2021

Martin Reidinger
Chief United States District Judge