IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00257-MR

| | |
|---|---|
| JOHNATHAN A. FULLER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NATHANIEL SHEPPARD, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment. [Doc. 33].

**I.  PROCEDURAL BACKGROUND**

On September 27, 2021, Plaintiff Johnathan A. Fuller ("Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against four prison official Defendants for the violation of his civil rights while incarcerated at Avery/Mitchell Correctional Institution ("AMCI") in Spruce Pine, North Carolina. [Doc. 1]. Plaintiff's unverified Complaint, in which he named, in their individual and official capacities, Correctional Officer Nathaniel Sheppard, Warden Ronnie Honeycutt, Disciplinary Hearing Officer Randy S.

Mull, and North Carolina Department of Public Safety (NCDPS)[1] Commissioner Todd Ishee, survived initial review on Plaintiff's Eighth Amendment deliberate indifference and Fourteenth Amendment equal protection claims against Defendants Nathaniel Sheppard and Ronnie Honeycutt.  Plaintiff's other claims, including claims under the First, Fourth, Fifth, Sixth Amendments; his official capacity claims; and Defendants Mull and Ishee were dismissed.  [Doc. 9 at 13-14].  Plaintiff alleges as follows.

On December 4, 2020, while Plaintiff, an African American, was housed in segregation at AMCI, Defendant Sheppard tried to force Plaintiff to sign a DC-160 form, which would have given permission to destroy all of Plaintiff's valuables, including Plaintiff's family photos and prescription eyewear.  Plaintiff was denied many of his photographs, which depicted Plaintiff's Caucasian fiancé and friends, and left with only a picture of his biracial child.  Plaintiff was denied his state-prescribed eyeglasses, which contain special UV lenses that protect Plaintiff's eyes, and has suffered significant eye damage as a result.  [Id. at 3-4].  AMCI, a white-controlled institution, is renowned for the suffering of its African American inmates and Defendant Sheppard's actions were racially motivated.  [Id. at 4].  Defendant

---

[1] The NCDPS is now called the North Carolina Department of Adult Corrections (NCDAC). The Court, however, will refer to it as the NCDPS in conformity with the forecast of evidence before the Court.

Honeycutt condoned Defendant Sheppard's actions, failed to intervene, and participated in "the prosecution of [Plaintiff and his] personal property." [Id.]. Plaintiff claims he suffered injury to his eyes and vision, lost property, and injury to his emotional and mental health. [Id. at 6]. For relief, Plaintiff seeks monetary and injunctive relief and punitive damages.[2] [Id. at 6].

On January 27, 2023, Defendants moved for summary judgment. [Doc. 33]. Defendants argue that summary judgment should be granted because Defendants did not violate Plaintiff's constitutional rights and because qualified immunity bars Plaintiff's claims against Defendants. [Id.]. In support of their summary judgment motion, Defendants submitted a brief, their own affidavits, various prison policies, Plaintiff's infraction history, inventories of Plaintiff's property, an incident report, disciplinary records, Plaintiff's Offender Population Unified System ("OPUS") summary, and Plaintiff's relevant medical records. [Docs. 34, 35, 35-1 to 35-16].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 36]. The Plaintiff was

---

[2] Because Plaintiff has been transferred from AMCI to Johnston Correctional Facility, his claim for injunctive relief is moot and will be dismissed. Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).

specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))]. Despite these instructions, Plaintiff did not file a response. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

5

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not

6

> defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

### III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following.

At the relevant times, Defendants Sheppard and Honeycutt were employed by AMCI as a Correctional Officer and the Warden, respectively. [Doc. 35-3 at ¶ 2: Sheppard Dec.; Doc. 35-12 at ¶ 2: Honeycutt Dec.]. Plaintiff was a convicted state prisoner housed at AMCI. [Doc. 35-1 at 1]. At AMCI, custody status determines what property offenders are allowed to possess in their cells. [See Doc. 35-5: Offender Personal Property Policy; Doc. 35-3 at ¶ 4]. Offenders in medium or close custody may possess up to 25 unframed photographs and eyeglasses, among many other items. [Doc. 35-3 at 1-5]. Offenders maintaining property more than established limits are deemed to be violating a direct order and are subject to disciplinary action. Excess property is considered contraband and subject to confiscation and disposal. The Special Affairs Captain and Unit Manager

determine proper disposition of contraband. [Doc. 35-5 at 6]. Offenders in Restrictive Housing are limited to only 10 photographs. [Doc. 35-5 at 7]. When regular population offenders are moved to Restrictive Housing, their personal property is inventoried and recorded on a DC-160 form. [Doc. 35-3 at ¶ 5]. Any property possessed by an offender that exceeds allowable Restrictive Housing limits is stored for the offender in a secure location. When the offender returns to the regular population, the property is returned. [Doc. 35-3 at ¶ 5].

On December 1, 2020, Plaintiff was transferred from AMCI's Watauga Unit to Restrictive Housing for threatening to assault staff. [Doc. 35-3 at ¶ 3; Doc. 35-11 at 3]. Before Plaintiff was moved to Restrictive Housing, Officers Larry Moore and Nathaniel Welch inventoried Plaintiff's personal property and recorded all items on a DC-160 form, including 25 photographs. [Doc. 35-3 at ¶ 6; Doc. 35-7]. Officers Moore and Welch also separately identified Plaintiff's property that was not allowed or in excess of that allowed in the general population and, therefore, considered contraband. [Doc. 35-3 at ¶ 6; see Doc. 35-5 at 6]. Officers Moore and Welch errantly included 15 of Plaintiff's photographs on this list. That is, as a general population offender, Plaintiff was allowed to have all 25 photographs. [See Doc. 35-5 at 2]. The 15 photographs disallowed during Plaintiff's stay in Restrictive Housing

should have been stored until his return to the general population, not designated as contraband. [See Doc. 35-5 at 7, Doc. 35-7, Doc. 35-10]. Nonetheless, Plaintiff's disallowed property, including the 15 photographs, was removed. [Doc. 35-3 at ¶ 6; see Docs. 35-7 at 2, 35-10]. None of the "contraband" photographs were described on the DC-160. They were simply listed as "15 Photos." [See Docs. 35-7 at 2, 35-10].

On arrival to Restrictive Housing, Officer Chris Wilcox inventoried Plaintiff's remaining personal property. [Doc. 35-3 at ¶ 7; Doc. 35-9]. The property Plaintiff was allowed to keep in Restrictive Housing was inventoried on one DC-160 form. [Doc. 35-8]. This property included a pair of shower shoes, a radio with ear buds, a comb, and a pair of eyeglasses with a case.[3] [Id.]. The disallowed property was listed on a separate DC-160 form and designated for storage. [Doc. 35-9]. This property included, among other things, an unidentified number of "assorted photo's," various books, magazines, and a wallet. [Id.].

At approximately 7:45 p.m. that day, after Plaintiff was in Restrictive Housing, Correctional Officer Joseph Buchanan tried to give Plaintiff the personal property he was allowed to have there, which included his

---

[3] It is unclear why Plaintiff was not allowed to have the remaining 10 photographs in Restrictive Housing. [See Doc. 35-5 at 7].

eyeglasses. [Doc. 35-4 at 1; Doc. 35-8]. At that time, Plaintiff told Officer Buchanan that he wanted to harm himself and needed to be on suicide watch, which is known as Self-Injurious Behavior (SIB) precautions. [Doc. 35-4 at 1, 3; Doc. 35-3 at ¶ 3]. Plaintiff was moved to an observation cell, where he remained for approximately two and a half days. [Doc. 35-4 at 1; Doc. 35-4 at 15-]. During that time, Plaintiff was monitored continuously by prison staff. [Doc. 35-4 at 10-11; Doc. 35-4 at 15-26]. Offenders on SIB precautions are not allowed to have any clothing or other possessions, including prescription eyeglasses. [Doc. 35-4 at 10]. For their safety, they are provided only a smock, a safety blanket, and a vinyl-coated mattress. [Doc. 35-4 at 10].

At approximately 10:45 a.m. on December 4, 2020, Plaintiff was removed from SIB precautions and placed on Close Observation pursuant to mental health staff recommendation. [Doc. 35-4 at 9; Doc. 35-4 at 13]. Under Close Observation, offenders have no property restrictions unrelated to their custody status. [Doc. 35-4 at 13]. The same day, after Plaintiff's return to Restrictive Housing from SIB precautions, Defendant Sheppard took Plaintiff a previously prepared DC-160 for his signature. [Doc. 35-3 at ¶ 8]. This DC-160 inventoried Plaintiff's property that had been categorized as contraband on December 1, 2020, including the 15 photographs, and was,

therefore, designated for disposal. [Doc. 35-10]. As noted, the inventory had been conducted by Officers Moore and Welch. [Doc. 35-3 at ¶ 8]. Plaintiff refused to sign the form and was charged with an infraction for his refusal. [Doc. 35-3 at ¶ 9]. Defendant Sheppard never inventoried Plaintiff's property between December 1, 2020, and December 4, 2020, and never removed Plaintiff's eyeglasses from his possession. [Doc. 35-3 at ¶ 10]. His only role in the relevant events was bringing Plaintiff a form to sign that documented Plaintiff's property that had been deemed by Officers Moore and Welch as contraband. [Doc. 35-3 at ¶¶ 8, 10]. Defendant Honeycutt was not involved in any matter relevant here and only ever had incidental dealings with the Plaintiff. [Doc. 35-12 at ¶¶ 3, 5]. Defendants Honeycutt and Sheppard did not discriminate against Plaintiff on the basis of race or otherwise. [Doc. 35-3 at ¶ 11; Doc. 35-12 at ¶ 5].

On January 27, 2021, approximately one month after Plaintiff was on SIB precautions, he was seen at the medical clinic for chest pain. He complained that his anxiety and depression had been very high the past two months and that he did not need to be seen for any medical reason at that time. Plaintiff also stated that he understood nothing could be currently done for his eyesight. Medical staff noted that Plaintiff had been diagnosed as legally blind in 2006. [Doc. 35-14]. On March 29, 2001, Plaintiff was seen

at the medical clinic by Lindwood Robinson, M.D., with complaints of worsening visual acuity and that his current prescription lenses were not adequate. [Doc. 35-15 at 1]. Dr. Robinson noted Plaintiff's diagnosis of chronic blindness in both eyes and requested a consultation for Plaintiff with the NCDPS Optometry Clinic. [Id. at 2]. In August 2001, Plaintiff was seen at the Optometry Clinic by Marvin Walker, D.O. [Doc. 35-16 at 1]. Dr. Walker noted Plaintiff's complaint that his left eye was "weak for over a year." [Id.]. Dr. Walker performed a vision examination and noted Plaintiff's prescription. [Id. at 2].

## IV. DISCUSSION

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and

12

Case 1:21-cv-00257-MR   Document 37   Filed 05/25/23   Page 12 of 14

protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, the uncontroverted forecast of evidence shows that no constitutional violation occurred. There is no forecast of evidence that Defendant Sheppard had any involvement in the designation of Plaintiff's property as contraband or that he had any knowledge of the images depicted on any of Plaintiff's photographs. Moreover, the forecast of evidence shows that Plaintiff was properly denied his eyeglasses while on SIB precautions for his own safety and that Plaintiff's eyeglasses were returned once he returned to Restrictive Housing. Even if Plaintiff had been improperly denied his eyeglasses, there is no forecast of evidence that Defendant Sheppard was involved in this decision. There is no forecast that Defendant Honeycutt participated in any of the alleged events or that any actions taken with respect to Plaintiff's property were racially motivated.

Finally, the forecast of evidence does not show that Plaintiff suffered any injury from the denial of his eyeglasses. He has been chronically, legally blind since 2006. The medical records show that Plaintiff's complaints related to the weakening of his left eye preceded the events at issue by several months. As such, Plaintiff has failed to forecast evidence that he suffered

13

Case 1:21-cv-00257-MR   Document 37   Filed 05/25/23   Page 13 of 14

any injury from the alleged, but unproven, deliberate indifference to his serious medical needs under the Eighth Amendment.

Because Plaintiff has not presented a forecast of evidence that Defendants violated a constitutional right, Defendants are entitled to qualified immunity on Plaintiff's remaining Eighth and Fourteenth Amendment individual capacity claims. As such, the Court will grant summary judgment for Defendants.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 33] is **GRANTED** and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: May 25, 2023

Martin Reidinger
Chief United States District Judge